Otis MAGGARD, Appellant,

v.

INTERNATIONAL HARVESTER COMPANY et al., Appellees (two cases).

James R. YOCOM, Appellant,

v.

Otis MAGGARD et al., Appellees.

Court of Appeals of Kentucky.

Feb. 1, 1974.

As Modified on Denial of Rehearing
April 12, 1974.

Eugene Goss, Goss & Forester, Harlan, for Otis Maggard.

William A. Rice, Rice & Huff, Harlan, for International Harvester Co.

Robert D. Hawkins, Chief Counsel, Dept. of Labor, Frankfort, Gemma M. Harding, Dept. of Labor, Louisville, Arthur R. Samuel, John Oakley, Dept. of Labor, Frankfort, for James R. Yocom and Special Fund.

CATINNA, Commissioner.

Otis Maggard was last exposed to the hazards of pneumoconiosis on January 3,

1973, which date is also the date of his last employment. He had worked in the mines for a period of more than forty years prior to his disability.

On April 2, 1973, the Workmen's Compensation Board found that Maggard was permanently and totally disabled by the occupational disease of pneumoconiosis. He was awarded compensation in the sum of $60 per week for a period of 425 weeks in the aggregate. Liability for the entire award was assessed against the Special Fund.

Maggard also filed a claim for benefits under the National Coal Mine Health and Safety Act of 1969, as amended, Title 30 U.S.C.A., Subchapter IV, Black Lung Benefits, Section 901, et seq. Although this federal claim was pending during the proceedings had before the Workmen's Compensation Board, no final action was taken prior to the time when the award of the board became final.

Maggard and the Special Fund, in separate appeals to the Harlan Circuit Court, contended that the board erroneously construed and applied the law as set out in the 1972 amendments to the Workmen's Compensation Act, particularly Section 37 of Senate Bill 184 (1972 Acts, Chapter 78, Section 37) relating to the effective date of certain provisions of the act as amended. The circuit court, in affirming the board, dismissed each appeal and from this judgment Maggard and the Special Fund appeal to this court.

Section 37 of Senate Bill 184 provides: "Effective date. This Act shall be effective on January 1, 1973; and effective for all claims filed on and after January 1, 1973; provided, however, that in the event federal law specifies that claims covered by provisions of this Act shall be filed with a federal agency such claims shall continue to be filed as required by the federal law until repeal or expiration of the federal law requiring same; then, in that event, the increase in benefits provided herein shall not ap-

ply to those claims where benefits are awarded under the federal law. The benefits under the present law KRS Chapter 342 shall apply to those claims."

This section lends itself to various constructions, thus forming the basis of the controversy in this proceeding. The Workmen's Compensation Board has construed this section as standing for the proposition that for so long as there is a Federal Black Lung Program the effective date of the amendments in Senate Bill 184, insofar as they apply to increased black-lung benefits, are deferred and all proceedings under the Kentucky Workmen's Compensation Act are governed by the law in effect prior to the amendment. Consequently, the board has limited its awards to a maximum of $60 per week for a period of 425 weeks and assessed all payments against the Special Fund.

Upon this appeal Maggard poses the three following questions:

## "QUESTION NO. 1

Whether the 1972 Amendments to the Kentucky Workmen's Compensation Act, incorporated in *Senate Bill 184* of the *Acts of the General Assembly,* require payment of benefits in the sum of $81.-00 per week for life to a workman successfully claiming total and permanent disability from occupational pneumoconiosis, when such workman's last exposure to the hazards of the occupational disease occurred on January 3, 1973.

## "QUESTION NO. 2

Whether the 1972 Amendments to the Kentucky Workmen's Compensation Act incorporated in *Senate Bill 184* of the *Acts of the General Assembly* require payment of benefits in the sum of $63.00 per week for 425 weeks to a workman successfully claiming total and permanent disability from occupational pneumoconiosis, where such workman's last exposure to the hazards of the occupational disease occurred on January 3,

1973, subject to increase to $81.00 per week for life should such workman's claim for Federal Black Lung Benefits be ultimately denied.

## "QUESTION NO. 3

Whether the 1972 Amendments to the Kentucky Workmen's Compensation Act, incorporated in *Senate Bill 184* of the *Acts of the General Assembly,* require payment of benefits in the sum of $63.00 per week for 425 weeks to a workman successfully claiming total and permanent disability from occupational pneumoconiosis, where such workman's last exposure to the hazards of the occupational disease occurred on January 3, 1973."

In a separate proceeding Maggard seeks to recover the difference between the $60 per week awarded him by the board and the sum of $63 per week to which he claims to be entitled.

The Special Fund upon its appeal questions the act as follows:

"1. Whether the 1972 Amendments to the Kentucky Workmen's Compensation Act, Incorporated Chapter 78, Section 37, of Senate Bill 184 of the Acts of the General Assembly delay the payments of increased benefits until January 1, 1974.

"2. Whether the 1972 Amendments to the Workmen's Compensation Act, Incorporated Chapter 78, Section 18(13) (a), in Senate Bill 184 of the Acts of the General Assembly became effective January 1, 1973."

It is admitted by all of the parties that Section 37 is very ineptly drawn and fails to clearly express the desires or intentions of the legislature insofar as an increase in black-lung benefits is concerned. The separate appeals of Maggard and the Special Fund are illustrative of a conflict that defies resolution from a mere reading of the act. Because of this conflict, it becomes necessary for us to examine Senate Bill 184 amending the Workmen's Compensa-

tion Act and prevailing circumstances and seek to ascertain therefrom the intention and purpose of the legislature in so enacting this amendment and, in particular, Section 37.

In Princess Manufacturing Company v. Jarrell, Ky., 465 S.W.2d 45 (1971), we said:

"* * * It is not the prerogative of the court to attempt to establish policy or determine the wisdom of the legislation. When we encounter a situation where the legislative intent is not discernible from the language of the act, we may look beyond the language of the act to legislative history and purpose of the legislation and other pertinent factors to determine legislative intent."

See also May v. Clay-Gentry-Graves Tobacco Warehouse Company, 284 Ky. 502, 145 S.W.2d 84 (1940).

A determination of the purposes of Senate Bill 184 requires that it be examined in light of certain provisions of the Federal Black Lung Act.

In the adoption of Subchapter IV, Black Lung Benefits, of the Coal Mine Health and Safety Act of 1969, the congressional findings and declaration of purpose were set out as follows:

"Congress finds and declares that there are a significant number of coal miners living today who are totally disabled due to pneumoconiosis arising out of employment in one or more of the nation's underground coal mines; that there are a number of survivors of coal miners whose deaths were due to this disease; and that few states provide benefits for death or disability due to this disease to coal miners or their surviving dependents. It is, therefore, the the purpose of this subchapter to provide benefits, in cooperation with the States, to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease; and to insure

that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or total disability due to pneumoconiosis." (30 U.S.C.A. Section 901).

■ The above section indicates that Congress intended to guarantee adequate benefits upon a permanent basis and not merely during the effective period of the act.

Section 921 of the act provided for the promulgation of standards defining total disability and certain presumptions that were to be considered. Section 922 providing for the payment of benefits required that the amounts awarded be reduced on a monthly or other appropriate basis by an amount equal to any payment received under a state workmen's compensation act, the consequence being that the federal payments merely supplemented payments by the states, where made, to the point where Congress was of the opinion that the recipient was receiving adequate benefits.

Section 923(a) of the act provided that the federal authorities would accept claims for benefits under the act until December 31, 1972, while 923(c) provided that no claim for benefits under the act would be considered unless the claimant had also filed a claim under the state workmen's compensation law prior to or at the same time his claim was filed for benefits under the act.

What we might term the penalty provisions of the act are set out in Sections 931 and 932. Section 931(a) provides that on or after January 1, 1973, claims for benefits for total disability due to pneumoconiosis should be filed pursuant to the applicable state workmen's compensation law, except during such period when the state law does not provide adequate coverage for pneumoconiosis. Section 931(b) defines adequate coverage of a state law as being, in effect, the same coverage provided by the federal act. The state law would be considered inadequate unless the

Secretary of Health, Education and Welfare should have established its adequacy by publishing this fact in the Federal Register.

Section 932 provides that during any period after December 31, 1972, in which the state workmen's compensation law is not on the list published by the secretary all black-lung benefits accruing to coal miners or their dependents would be governed and paid pursuant to the provisions of the Federal Longshoremen's and Harbor Workers' Compensation Act. Section 932 of the act has the effect of abrogating a state workmen's compensation act when the Secretary of Health, Education and Welfare, or after December 31, 1972, the Secretary of Labor, found the state law and the benefits thereunder inadequate thereby forcing the mining industry to operate under a federal act.

This was the posture of the situation at the time Senate Bill 184 was enacted. The legislature was faced with the necessity of passing an act that complied with federal standards or of surrendering the administration and payment of pneumoconiosis benefits to the federal government under the Longshoremen's and Harbor Workers' Compensation Act.

An examination of Section 18 of Senate Bill 184 reveals that KRS 342.316 was extensively amended for the purpose of meeting the requirements and presumptions of the Federal Black Lung Act particularly those contained in Section 921. The senate bill also amended many other sections of the Kentucky Workmen's Compensation Act, including those providing a formula for determining the maximum benefits paid for total disability and the duration of all such payments.

At the time the Kentucky Legislature was in the process of enacting Senate Bill 184, an effort was being made in Congress to extend black-lung benefits under Subchapter IV for at least another year.

■ The federal act then in effect expired December 31, 1972, and the penalty

provisions of the federal act would therefore have become effective as to any state workmen's compensation act on January 1, 1973. The legislature was obviously seeking to comply with the federal requirements and in so doing to cause its actions to become effective not later than the date of the expiration of the federal act. As the legislature was aware that Congress was considering a further extension of the Federal Black Lung Act, it is apparent that it was not contemplated that those provisions of Senate Bill 184 relating to increased black-lung benefits should take effect until the federal act, as extended, had expired. Section 37 provided for the contingency of the federal act's being extended to a date beyond January 1, 1973. We are of the opinion that Section 37, as adopted, contemplated that increased black-lung benefits, as provided for in Senate Bill 184, should not take effect until such time as the federal act, then in effect or as extended, had expired or been repealed. Although Section 37 does not specifically refer to the black-lung amendments of the Kentucky Workmen's Compensation Act, it identifies those sections of the amended act that are not to become effective as being those which at the time were governed by the federal act. Insofar as we are aware, the only duplication in the Kentucky Workmen's Compensation Act and the federal act was the provision of the Coal Mine Health and Safety Act of 1969 for the payment of black-lung benefits. Consequently, Section 37 had particular reference to black-lung benefits when it provided that increase of benefits, as set out in the act, did "not apply to those claims where benefits are awarded under the federal law."

Subsequent to the final passage of Senate Bill 184 and the adjournment of the legislature, Congress, on May 19, 1972, enacted the "Black Lung Benefits Act of 1972," thus extending federal black-lung benefits for a period of one year—December 31, 1973. The federal act of 1972 contained all of the provisions of the original 1969 act with the exception that the words "underground coal mines" in the 1969 act were deleted and the words "coal mines" inserted. The 1972 act contained identical provisions insofar as eligibility was concerned with the exception that the claim was required to be filed on or before December 31, 1973. Presumptions, definitions, and penalties of the 1969 act were all made a part of the 1972 act.

Considering the specific questions that the parties have encountered by reason of the asserted ambiguity in Section 37 of Senate Bill 184, we have concluded as follows: By the terminology contained in Section 37, all the amendments of the Workmen's Compensation Act embraced within Senate Bill 184 took effect on January 1, 1973, except those amendments which increased black-lung benefits, which increases were deferred for so long as there was an effective federal black-lung program.

It is contended that the legislature did not contemplate an extension of the federal program and, therefore, the extension does not fall within the meaning of Section 37. It should be noted that if this were true, then there would have been no need for any part of Section 37 subsequent to its first statement that the act should be effective on January 1, 1973. Reference is made to that portion of Section 37 which provides as follows:

" * * * however, that in the event federal law specifies that claims covered by provisions of this Act shall be filed with a federal agency such claims shall continue to be filed as required by the federal law until repeal or expiration of the federal law requiring same; then, in that event, the increase in benefits provided herein shall not apply to those claims where benefits are awarded under the federal law. The benefits under the present law KRS Chapter 342 shall apply to those claims."

The next ambiguity asserted by the parties entails the latter part of Section 37

and is nothing more than a question of procedure. It is apparent that the legislature, in providing for an orderly implementation of all the amendments to the workmen's compensation law as set out in Senate Bill 184, intended that the "present law" (the 1970 act) should remain in effect in those instances where the effective date of an amendment had been deferred by the federal law. Thus, until such time as the Federal Black Lung Program was terminated, a black-lung claimant under the Kentucky Workmen's Compensation Act was bound to proceed under the 1970 act.

■ The parties also are concerned with the question of whether an award made under the 1970 law could be reviewed and the amount thereof increased or modified upon a proper application after the Federal Black Lung Program has terminated. The present workmen's compensation law, as amended, makes no provision for a reopening upon such grounds. By no stretch of the imagination could any part of Section 37 be so construed as to permit the reopening of awards made under the 1970 law subsequent to termination of the federal program. Such awards are final and are subject to review only upon the grounds provided by KRS 342.125.

It is seriously contended that should a federal black-lung claim be denied then the wording of Section 37 is such that the case should be reopened and the award increased to comply with the Kentucky act, as amended. This claim is based upon the wording in the section which reads: " * * * the increase in benefits provided herein shall not apply to those claims where benefits are awarded under the federal law." Maggard claims that there must be an award under the federal law if he is to be bound by an award of the Workmen's Compensation Board made prior to the amendment's becoming effective. However, when we construe the entire sentence, we can only conclude that the phraseology is such that the legislature was not speaking of an individual or an individual award but rather designating a class of people who would be eligible under the federal act. We do not believe the legislature was concerned with whether a claim was filed or an award made but only with the eligibility of the person under the federal act.

■ One other phrase in Section 37 has caused some considerable confusion. After saying that the act shall be effective on January 1, 1973, the section provides: " * * * and effective for all claims filed on or after January 1, 1973; * * *." The question is whether one last exposed to black lung in 1972 could file a claim in 1973 and thereby be entitled to the increased benefits afforded by the amendments. We do not consider this to be a proper interpretation, as we have held that the law in effect on the date of the injury or the date of the last exposure, as the case may be, is the law that fixes the rights of the claimant, and the filing date of the claim has no bearing upon the award other than whether there has been a compliance with the statute of limitations. KRS 342.316(5); Beth-Elkhorn Corporation v. Thomas, Ky., 404 S.W.2d 16 (1966).

■ Maggard, in a separate appeal, seeks to recover the difference between $60 per week awarded by the board and $63 which he claims should have been awarded. As previously stated, the Workmen's Compensation Board, in its construction of Section 37 of Senate Bill 184, has refused to increase any awards made to black-lung claimants. It is true that Section 37 did provide that there would be no increase in benefits so long as there was a federal black lung program. Yet, in the next sentence the section provides: "The benefits under the present law KRS Chapter 342 shall apply to those claims."

KRS 342.095 of the then-present law provided:

"The maximum basic weekly income benefit for total disability shall not exceed 55% of 85% of the average weekly wage of the state, computed as provided in KRS 342.143 * * *."

KRS 342.143 provides for the termination of a state average weekly wage to be used in determining amounts due claimants under the Workmen's Compensation Act. This section provides in part that on or before September 1 of each year the state average weekly wage shall be determined by the method set out therein. The section then provides: "The average weekly wage as so determined shall be applicable for the full period during which income or death benefits are payable, when the date of occurrence of injury or of disablement in the case of disease, or of death, falls within the calendar year commencing January 1, following the September 1 determination." The required September 1 determination of the state average weekly wage was duly made and certified on June 7, 1972, at which time it was fixed at $135.01. Thus, employing the computations provided by KRS 342.095, we determine $63 per week to be the maximum payable on claims where the injury or disability occurs within the calendar year commencing January 1, 1973. Maggard was disabled on January 3, 1973. Therefore, the maximum amount of his benefits should have been determined at $63 per week.

■ The cross-appeal of the Special Fund is concerned primarily with Section 18(13)(a) of Senate Bill 184 (now KRS 342.316(13)(a)). Prior to the amendment by the senate bill, in those cases where it had not been conclusively proven that the claimant's disability had resulted from his last exposure, all compensation was assessed against the Special Fund. The amendment as contained in Senate Bill 184 provided as follows:

"In those cases where disability or death are not conclusively proven to be the result of such last exposure all compensation shall be paid out of the special fund for all claims filed prior to January 1, 1973; and 75 per cent shall be paid by the special fund and 25 per cent by the employer for all claims filed thereafter."

■ We do not believe that the provisions of Section 37 in any way deferred the effective date of this particular section of Senate Bill 184. To require apportionment where the last exposure occurred prior to January 1, 1973, would violate Section 19 of our Constitution. Cf. General Refractories Company v. Henderson, 313 Ky. 613, 232 S.W.2d 846 (1950). However, where a claimant was last exposed after January 1, 1973, any award made by the Workmen's Compensation Board should be so allocated as to require the Special Fund to pay 75% of the award, while the remaining 25% should be assessed against the claimant's employer.

Maggard, in his brief, claims that because of the ambiguities of Section 37 there are six questions which ultimately must be answered by this court. Although we have answered them in the course of this opinion, for the sake of clarity and by way of summary, we set out these questions together with our answers:

"(1) Do the 1972 Amendments, increasing benefits for permanent and total disability to $81.00 per week for life (KRS 342.730) apply to claims 'filed' on or after January 1, 1973, irrespective of the date of the last injurious exposure, or does this increase in benefits result only to workmen who had injurious exposure on or after January 1, 1973?"

The increased benefits apply only to those workmen whose last injurious exposure occurred on and after January 1, 1973. The maximum amount of $81 will be subject to adjustment on the basis of the state average weekly wage as determined by KRS 342.143.

"(2) Assuming that the increase in benefits results only to workmen who were injuriously exposed during the calendar year 1973, without reference to the date of filing, is the increase in benefits provided by KRS 342.730 totally deferred until expiration of the Federal Black Lung Program, without reference to the outcome of any

Federal Black Lung Claim which a miner might file?"

The increase provided by KRS 342.730 is totally deferred until expiration of the Federal Black Lung Program, and we are of the opinion that the outcome of a federal black-lung claim filed by a miner does not enter into the question of deferment.

"(3) Assuming that the increase in benefits results only to workmen who were injuriously exposed during the calendar year 1973, without reference to the date of filing, does the increase in benefits effected by KRS 342.730 result to those workmen whose Federal Black Lung Benefits are ultimately denied and, if so, by what mechanical or procedural process should such claims be handled?"

The date of the last injurious exposure determines the amount of compensation payable, KRS 342.316(5), and the act provides no procedure by which a claimant who has been denied federal black-lung benefits might have his claim reopened for further consideration.

"(4) Whether the increase in benefits is deferred at all."

As we construe Section 37, the increased benefits payable to black-lung claimants under the Kentucky Workmen's Compensation Act, as amended by Senate Bill 184, are deferred for such a period of time as there is in existence a federal black-lung program.

"(5) The extent of the employer's liability."

Upon claims filed subsequent to January 1, 1973, where the last injurious exposure occurred after January 1, 1973, the award shall be assessed 75% against the Special Fund and 25% against the employer.

"(6) Whether, in any event, the pre-1972 formula for determining total and permanent disability benefits, incorporated in KRS 342.095 (55% of 85% of the average weekly wage of the state as computed and provided in KRS 342.140), applied to the prevailing wage for the applicable year 1973 ($135.01 per week), is the appropriate formula for ascertaining weekly benefits payable to a workman whose last injurious exposure was in calendar 1973, resulting in minimum benefits of $63.00 per week for 425 weeks."

Section 37 of Senate Bill 184 does not in any way indicate that this formula as set out was not to be used in those cases where the injurious exposure occurred in 1973, even though an increase in black-lung benefits was deferred during such period as there was a federal black-lung program.

So much of the judgment as upholds the findings of the Workmen's Compensation Board to the effect that Otis Maggard was totally disabled as the result of pneumoconiosis is affirmed. The remaining portion of the judgment is hereby reversed with directions that a new judgment be entered remanding the case to the Workmen's Compensation Board for further action in conformity with this opinion.

OSBORNE, C. J., and JONES, MILLIKEN, PALMORE, REED and STEINFELD, JJ., sitting.

All concur.