**Fid CHAPMAN, Appellant,**

**v.**

**EASTERN COAL CORPORATION et al.,**
**Appellees.**

Court of Appeals of Kentucky.

Feb. 7, 1975.

Kelsey E. Friend, C. Kilmer Combs, Pikeville, for appellant.

Baird & Baird, Pikeville, Earl Cornett, Frankfort, for appellees.

Cyril E. Shadowen, Asst. Counsel, Dept. of Labor, Louisville, for appellee James R. Yocum, Commissioner of Labor and Special Fund.

J. W. Craft, Jr., Craft, Barret, Haynes & Ward, Hazard, amicus curiae, for Hazard Coal Operator's Association.

C. Gibson Downing, Bennett Clark, Stoll, Keenon & Park, Lexington, amicus curiae, for Kentucky Coal Association.

Harry C. Campbell, Lexington, for Big Sandy-Elkhorn Coal Operators' Association.

David L. Beckman, Louisville, for Associated Industries of Kentucky.

PALMORE, Justice.

Fid Chapman, a 58-year-old coal miner, quit working for Eastern Coal Corporation on March 19, 1973, and filed a claim for workmen's compensation on March 28, 1973. He had worked in the coal mines for some 16 years. On April 29, 1974, following the reception of evidence pro and con, the compensation board entered a finding to the effect that he had become totally and permanently disabled on March 19, 1973, as the result of "the occupational disease of coal workers' pneumoconiosis and/or silicosis" and awarded him compensation of $63 per week for 425 weeks plus reimbursement of medical expenses not exceeding $3500. This was the maximum compensation allowable for total permanent disability prior to the enactment of Chapter 78, Acts of 1972, hereinafter called the 1972 amendment.

On Chapman's appeal to the circuit court, in which he contended that he should have been awarded $81 per week for life plus unlimited medical expenses in accordance with the 1972 amendment, the action of the board was sustained by an order in which the court expressed misgivings with respect to the constitutionality of Sec. 37 of the 1972 amendment as it has been construed in Maggard v. International Harvester Company, Ky., 508 S.W.2d 777 (1974). In that case, however, no constitutional issue was presented or decided.

The purpose and effect of the 1972 amendment were to bring our workmen's

compensation law into substantial conformity with Subchapter IV of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 801, 901 et seq., which subchapter is entitled, "Black Lung Benefits," and will be referred to here as the federal black lung law, or simply as the federal law. Most important among the changes in the state law was a very substantial increase in the amount and duration of benefits payable to successful claimants, effective January 1, 1973, except as to those covered by the federal law.

Essentially, the federal law enabled black lung claimants who did not have commensurate advantages under state compensation laws to claim benefits from the federal government and at federal expense until the end of 1972. During 1972 Congress extended this period until the end of 1973, except that as to claims filed during the last half of 1973 liability for benefits payable after December 31, 1973, was shifted to the employers. 30 U.S.C.A. §§ 924, 925.

*Maggard,* supra, construed Sec. 37 of the 1972 amendment to mean that if a claimant was eligible under the federal law he could not recover the increase in monetary benefits effected by the 1972 amendment of the state law. In short, it was determined that the legislative intent was to exclude black lung claimants whose last exposure occurred in 1973 from the increase in maximum payments available by virtue of the 1972 amendment to other workmen who became disabled in 1973. The ostensible reason for the exclusion was that these particular claimants already were the beneficiaries of special dispensation by Congress and were, presumably, sufficiently provided for under the federal black lung law. An obvious effect was to leave any additional finanacial burden with respect to black

lung claimants upon the taxpayers of the United States instead of shifting it to the coal mining industry so long as Congress saw fit to make the public money available.

*Maggard* held also that the rights of a black lung claimant under our own statutes depend upon the date of the last injurious exposure vis-a-vis the time of filing his claim. Maggard v. International Harvester Company, Ky., 508 S.W.2d 777, 783 (1974). Though it may be different under the federal law, this conforms to the rule of statutory construction consistently followed in Kentucky when there is no indication of a legislative intent to the contrary.

The sole contention made now is that the denial of increased monetary benefits to black lung claimants whose claims arose during the 1973 transition period works an invidious discrimination as between them and coal miners (and other covered employes) disabled during the same period of time from causes different from black lung and thus violates the Equal Protection Clause of the 14th Amendment.

The last injurious exposure and disability of the appellant, Chapman, occurred in March of 1973. Theretofore, in 1971, he had applied for benefits under the federal black lung law but the claim had been denied because, he said, he was still working at that time.[1] Whether at any time during the pendency of this proceeding Chapman had a federal claim in process does not appear from the record.[2]

The criteria of recovery by black lung claimants under the federal law do not appear to be significantly different from those provided by our compensation law. Thus a claimant entitled to maximum benefits under the state law should be eligible

---

1. Among other things, however, subject to certain exceptions the federal law provides that no claim for benefits shall be considered unless a claim has been filed under the state law or is filed simultaneously with the federal claim. There is no indication that Chapman had filed a claim under the state law when his 1971 federal claim was filed.

2. There is no reason to infer that the dismissal of his federal claim prematurely filed in 1971 would prejudice another federal claim if filed after the date of his last injurious exposure.

also for maximum benefits afforded by the federal law. There are, however, substantial differences in amount. This case presents a fair example. The appellant has been found totally and permanently disabled by the reason of pneumoconiosis resulting from his work in the coal mines. He has one dependent (his wife) and a life expectancy of 15.39 years. His rate of pay during employment ($20 per shift, 5 days per week) entitled him to the maximum amount of state compensation, which is $63 per week for 425 weeks and reimbursement of medical expenses not exceeding $3500. Assuming the fact-finding federal agency would reach the same conclusion with respect to the cause and extent of his disability, he would be entitled to 75% of "the minimum monthly payment to which a Federal employee in grade GS–2, who is totally disabled, is entitled at the time of payment under chapter 81 of Title 5," but "reduced . . . by an amount equal to any payment received . . . under the workmen's compensation . . . laws of his State on account of the disability of such miner . . ." 30 U.S.C.A. § 922(a)(1) and (2), (b). According to Title 20, § 410.510(d) of the Social Security regulations, 39 FR 26632, this payment amounts of $254.70 per month through September of 1973 and $266.40 per month thereafter, and it continues for life, subject to fluctuation with the current salary schedules for federal employes. Since $266.40 per month is $61.48 per week and the appellant will draw $63 per week under state law, any recovery awarded him under the federal law would be completely offset for the first 425 weeks or until such earlier time as the federal salary schedule should be amended upward. Roughly speaking, then, as of the present time it appears that under the combined state and federal laws he can collect $63 per week for 425 weeks and $61.48 per week thereafter during his lifetime.

On the other hand, except for Sec. 37 of the 1972 amendment he would be entitled to draw $81 per week for life, plus unlimited medical expenses. Therefore, aside from medical expenses the disparity between what he should be able to draw under the combined laws and what he could draw under the state laws were it not for the exclusion of his class of claimants is $18 per week for 425 weeks and $19.52 per week for the remainder of 15.39 years. Hence it is clearly apparent that the difference is substantial.

 It is conceded that a classification does not violate the principle of uniformity, or of equal protection of the laws, if it has a reasonable basis, or "rational justification." Cf. United States v. Kras, 409 U.S. 434, 446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). If the objective is legitimate and the classification is rationally related to that objective, it is not constitutionally arbitrary. Cf. Richardson v. Belcher, 404 U.S. 78, 84, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). The goal here seems to have been to defer placing an economic burden upon the coal industry until it was no longer being carried on other shoulders. Though we do not defend it, our prerogative as a court does not extend beyond determining whether such an objective is a reasonable basis for the exercise of legislative power, and we cannot avoid the conclusion that it is. As we understand the constitutional protection against unreasonable discrimination, it is the reason for rather than the amount of the difference that is of primary importance.

"In 'the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.' A legislature may address a problem 'one step at a time,' or even select one phase of one field and apply a remedy there, neglecting the others.'" Jefferson v. Hackney, 406 U.S. 535, 546, 92 S.Ct. 1724, 1731, 32 L.Ed.2d 285 (1972).

 In the beginning (1916) our workmen's compensation act did not apply at all to occupational diseases as such. See background discussion in Jellico Coal Co. v. Adkins, 197 Ky. 684, 247 S.W. 972,

973–974 (1923). Disability or death from occupational silicosis was made compensable by Ch. 82, Acts of 1944, and the law was extended to occupational diseases in general by Ch. 77, Acts of 1956. Specifically excluded, however, were "ordinary diseases of life to which the general public is equally exposed outside of the employment . . . except where such diseases follow as an incident of an occupational disease." The word "pneumoconiosis" first appeared in § 3, Ch. 276, Acts of 1962, which added "any other compensable pneumoconiosis" to the provisions of KRS 342.316(4) and (6) relating to silicosis claims and used the same terminology in a new subsection (13) of the statute. In the same year this court recognized the term "pneumoconiosis" as descriptive of a compensable disease (assuming, of course, supportive medical evidence with respect to causation). Gregory v. Peabody Coal Co., Ky., 355 S.W.2d 156 (1962); High Splint Coal Co. v. Chandler, Ky., 363 S.W.2d 103 (1962). Nevertheless, the claims of coal miners disabled from pulmonary conditions continued to stand at a disadvantage for the simple reason that many medical experts on the subject— probably a great majority—were of the opinion that non-silicotic "black lung" is not a disease and that the other symptoms or diseases usually manifested along with or as a part of the disabling condition, such as emphysema, are infirmities to which the general public is equally exposed. From the cases that have come before us over the years we have the distinct impression that the conservative and generally prevalent viewpoint in the medical profession has been that exposure to the dust of soft coal will not alone cause any debilitating disease.

Not until the enactment of Ch. 16, Acts of 1970, were the provisions of KRS 342.-316 so broadened as to leave no doubt that "black lung" is covered. This act removed the qualification that ordinary diseases of life to which the general public is equally

exposed shall not be compensable and amended KRS 342.316(6) to provide that in case of death or disability from silicosis, "coal worker's pneumoconiosis," or any other compensable pneumoconiosis, "complicated with . . . pulmonary emphysema or other pulmonary dysfunction," if the claimant has had substantial employment exposure "to harmful dust or industrial hazards reasonably competent to produce such accompanying disease or dysfunction, there is a rebuttable legal presumption that all resultant disability therefrom is work related and compensable."

The preamble of the federal black lung law observed in 1969 that "few States provide benefits for death or disability due to this disease." 30 U.S.C. § 901. Thus it was Congress, a political body, which finally bridged the causal gap that medicine had been hesitant to cross, and in so doing provided federal benefits to which most other workmen, whether disabled by disease or by injury, were not and are not entitled. All this we point out only to illustrate that science, history, and politics all have combined to put black lung in a different class from other work-connected disabilities. It has traveled a road of its own. In the absence of Ch. 16, Acts of 1970, it would in most instances be compensable only under the federal law. Under the 1972 act it was unequivocally placed on an equal plane with other work-connected disabilities as of January 1, 1974. While we might be inclined to view the one-year deferment effected by Sec. 37 of the 1972 act as ill-advised or ill-drawn, and perhaps both, there can be little doubt of what it meant, and any doubt as to its constitutional validity must be resolved in favor of the legislative prerogative. Cf. Thayer, "The Origin and Scope of the American Doctrine of Constitutional Law," 7 Harv.L. Rev. 129, 148.

The judgment is affirmed.

All concur.