RENDERED: SEPTEMBER 18, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0504-WC

JUDY HOWELL                                     APPELLANT/CROSS-APPELLEE

                  ON APPEAL FROM COURT OF APPEALS
V.                          NO. 2024-CA-0122
            WORKERS' COMPENSATION NO. WC-93-07353

FLOYD COUNTY BOARD OF               APPELLEE/CROSS-APPELLANT
EDUCATION

AND

DR. CASSANDRA GARRETT; HON.                       APPELLEES
CHRIS DAVIS, ADMINISTRATIVE LAW
JUDGE; AND WORKERS'
COMPENSATION BOARD

AND

2025-SC-0022-WC

FLOYD COUNTY BOARD OF               CROSS-APPELLANT/APPELLEE
EDUCATION

                  ON APPEAL FROM COURT OF APPEALS
V.                          NO. 2024-CA-0122
            WORKERS' COMPENSATION NO. WC-93-07353

JUDY HOWELL                               CROSS-APPELLEE/APPELLANT

AND

DR. CASSANDRA GARRETT; HON.                       APPELLEES
CHRIS DAVIS, ADMINISTRATIVE LAW
JUDGE; AND WORKERS'
COMPENSATION BOARD

**OPINION OF THE COURT BY JUSTICE BISIG**

**AFFIRMING**

This workers' compensation appeal involves Kentucky's adoption and application of the Official Disability Guidelines (ODG), a primary standard of reference for healthcare providers in determining which treatments are medically necessary for workers' compensation injuries. Judy Howell was injured while working for the Floyd County Board of Education in 1993, and ultimately awarded workers' compensation benefits, including future medical benefits. After nearly thirty years of using Hydrocodone, as prescribed by her treating physician, Floyd County initiated a medical fee dispute to contest the compensability of the Hydrocodone. Pursuant to the ODG, Hydrocodone is not recommended for long-term use. Despite Howell's presentation of evidence to support her continued use of Hydrocodone, an ALJ determined the prescription was non-compensable. The Board agreed, as did the Court of Appeals, albeit for different reasons once it assessed Howell's constitutional claims. After review, we uphold the ALJ's decision deeming that the Hydrocodone is non-compensable for treatment of Howell's work-related injury.

**FACTS AND PROCEDURAL HISTORY**

Judy Howell sustained a work-related low back injury on January 18, 1993, while employed by the Floyd County Board of Education. On July 27, 1995, an Administrative Law Judge (ALJ) awarded benefits for a 50% permanent partial disability and future medical expenses related to the injury. In 2022, the Floyd County Board of Education sought to reopen the claim and

2

submitted a medical fee dispute regarding the compensability of prescriptions for Hydrocodone and Gabapentin.[1]

Howell provided testimony during a hearing on April 25, 2023, and confirmed she was receiving medical treatment from Dr. Cassandra Garrett. Howell sees Dr. Garrett every three months and is prescribed Hydrocodone. In addition to her back pain diagnosis, Howell has bilateral sciatica and polyneuropathy and neurologic complications from Type II diabetes. In her treatment plan, Dr. Garrett noted that Howell had been on the pain medication since 1993, and that she projected Howell would need to remain on the medication for life.

Dr. Zaid Fadul, a family medicine and addiction specialist, conducted utilization review on behalf of Floyd County and submitted a medical report. In his report, he applied the Official Disability Guidelines for Treatment of Workers' Compensation (ODG) and concluded that, in Howell's case, Hydrocodone is not medically reasonable or necessary. The ODG is a set of evidence-based treatment and disability guidelines Kentucky has recently adopted for use in the treatment of work-related injuries and occupational diseases in workers' compensation claims. The ODG, developed by MCG Health, were adopted by the Commissioner of the Department of Workers' Compensation pursuant to authority expressly granted by the Legislature in Kentucky Revised Statute (KRS) 342.035. Dr. Fadul explained that, according

---

[1] The medical fee dispute also contested the compensability for another prescription for Duloxetine, but the testimony quicky revealed that the prescription was discontinued and thus no longer a cause for dispute.

3

to the ODG, short-acting opioids or narcotics may be considered for the treatment of acute or chronic pain when first-line medications have been attempted without success. However, Hydrocodone is not recommended for long-term use due to the lack of evidence supporting its efficacy in long-term pain relief and its associated risks, including dependency and abuse.

Additionally, Dr. Fadul noted that Dr. Garrett's records did not clearly demonstrate significant pain relief or functional improvement from the ongoing use of Hydrocodone, and that Howell continued to report high levels of pain despite taking the prescription. As a result, Dr. Fadul concluded that Hydrocodone did not meet ODG recommendations and recommended against continued use.

On the employer's behalf, Dr. Rafid Kakel conducted a comprehensive medical records review. In his report, he opined that the continued use of Hydrocodone is not appropriate for Howell's condition. Dr. Kakel explained that there is a lack of evidence demonstrating its long-term efficacy and significant risks associated with long-term use, including physical dependence, tolerance, and addiction. Further, medical literature indicates that opioids may contribute to cardiac-related fatalities and significantly increase the overall risk of mortality.

On June 17, 2023, an ALJ determined that Dr. Garrett's prescription for Gabapentin is compensable, but her Hydrocodone prescription was not compensable. The ALJ determined that the side effects of long-term use of Hydrocodone and the failure to consider alternative pain control methods

4

rendered continuing the prescription to be unreasonable. However, the ALJ did conclude that Howell would be entitled to a reasonable weaning period if she were going to stop taking the Hydrocodone. Howell filed a petition for reconsideration, specifically requesting findings as to what sections of the ODG apply to her claim, and whether the ALJ considered exceptions to the ODG prior to making his determination. Howell also requested findings as to whether this long-standing treatment would have been considered reasonable and necessary treatment, absent the application of the ODG.[2] The ALJ reissued an Order on July 10, 2023 and reaffirmed his reasoning to deny compensability of the Hydrocodone prescription.

The Board affirmed the ALJ, concluding that Dr. Fadul and Dr. Kakel's opinions constitute substantial evidence. The Board acknowledged that perhaps another ALJ may have ruled in a different manner based on these facts, but nevertheless the ALJ is the trier of fact who must determine whether a claimant has sufficiently rebutted the ODG's determination that a treatment option is non-compensable.

The Court of Appeals affirmed the Board and the ALJ. Notably, Howell's arguments included claims regarding the constitutionality of the application of the ODG to workers' compensation claims, contesting whether its application complies with the mandates of due process and equal protection. Neither the

---

[2] Floyd County also filed a petition for reconsideration, rearguing the merits of the claim that Gabapentin is not reasonable and necessary treatment. The petition also argued that the ODG did not recommend Gabapentin because there is no neuropathic condition documented in Howell's medical records.

Board nor the ALJ are empowered to decide constitutional claims. *Blue Diamond Coal Co. v. Cornett,* 300 Ky. 647, 189 S.W.2d 963 (1945). Therefore, the Court of Appeals was the first tribunal to address these claims.

The appellate court explained that adoption of the ODG effectively altered the burden of proof by creating a new, mandatory presumption of non-compensability regarding certain prescriptions, whereas, before the implementation of the ODG, Howell's doctor was free to exercise medical judgment as to which prescriptions were needed so long as those prescriptions were medically "reasonable and necessary." According to the Court of Appeals, prior to adoption of the ODG, Floyd County would have needed to disprove the reasonableness and necessity of the prescription whereas now, it is presumed unreasonable and Howell must rebut it by proving its reasonableness and necessity. Because this type of burden shifting constitutes a substantive change, the statute allowing the Commissioner to adopt the ODG cannot apply retroactively to Howell's claim.

However, despite the court's reasoning that applying the ODG's presumption to Howell's claim effectively "reduced" the amount awarded to her in 1995, i.e., the award entitling her to future medical expenses related to the work injury, and therefore infringing upon her vested right to continued medical treatment, the Court of Appeals concluded there was no error. Irrespective of the presumption imposed by the ODG, the ALJ ultimately weighed substantial evidence presented by both sides of this medical fee

dispute and Howell's evidence came up short. As such, the Court of Appeals affirmed the Board and the ALJ.

Howell now appeals to this Court.

## ANALYSIS

"The party responsible for paying post-award medical expenses has the burden of contesting a particular expense by filing a timely motion to reopen and proving it to be non-compensable." *Crawford & Co. v. Wright,* 284 S.W.3d 136, 140 (Ky. 2009) (citing *Mitee Enterprises v. Yates,* 865 S.W.2d 654 (Ky. 1993)). Here, Floyd County initiated this medical fee dispute contesting the compensability of Hydrocodone, and therefore Floyd County bears the burden of proof. As explained in *Crawford*, the party seeking reopening bears the burden of proving the treatment is unreasonable or unnecessary for the injury's effects. 284 S.W.3d at 140-41. As discussed in further detail below, Howell is then tasked with rebutting Floyd County's evidence.

Where the party with the burden of proof was successful before the ALJ, the issue on appeal is whether substantial evidence supported the conclusion. *Whittaker v. Rowland,* 998 S.W.2d 479, 481 (Ky. 1999). Because Floyd County was successful in proving the non-compensability of Hydrocodone, we must determine whether substantial evidence supports the ALJ's decision. *Wolf Creek Collieries v. Crum,* 673 S.W.2d 735 (Ky. 1984). Substantial evidence is evidence of "substance and relevant consequence" having fitness to induce conviction in the minds of reasonable people. *Miller v. Tema Isenmann, Inc.,* 542 S.W.3d 265, 270 (Ky. 2018) (quoting *Smyzer v. B.F. Goodrich Chemical Co.,*

7

474 S.W.2d 367, 369 (Ky. 1971)). Therefore, we must determine whether substantial evidence supported the ALJ's determination that Howell's Hydrocodone prescription is non-compensable.

## I.     The Official Disability Guidelines.

This appeal centers around Kentucky's use of the ODG in assessing the compensability of an injured workers' treatment and prescription medication. KRS 342.035 directs the Commissioner of the Department of Workers' Claims to develop or adopt medical treatment guidelines for use in the treatment of work injuries. On October 22, 2018, the Department announced the selection of the Official Disability Guidelines (ODG) as its treatment guidelines.[3] The purpose of adopting the ODG is to facilitate safe and appropriate treatment of work-related injuries and occupational diseases. As part of this statutory mandate, the Commissioner also promulgated regulations to implement the use of the ODG. 803 KAR 25:260.

803 KAR 25:260 §1(16) states that "[t]reatment guidelines" are the treatment guidelines developed or adopted by the Commissioner pursuant to KRS 342.035(8)(a), i.e. the ODG. "The treatment guidelines apply to all treatment administered on and after September 1, 2020." 803 KAR 25:260 §5. The regulation explains that

> [t]he employer shall not be responsible for medical treatment designated as "Not Recommended" under the guidelines or not addressed in the treatment guidelines unless it was
>      (a) Provided in a medical emergency;

---

[3] According to Floyd County, many states have adopted the ODG, including Tennessee, Indiana and Ohio. The ODG is the most widely used guideline in state workers' compensation systems.

8

(b) Authorized by the medical payment obligor; or

(c) Approved through the dispute resolution process by the administrative law judge.

In this case, according to two medical professionals who utilized the ODG, Hydrocodone is "Not Recommended" to treat Howell's injury. Subsection (2) explains that medical providers contesting treatment deemed "Not Recommended" by the guidelines

shall articulate in writing sound medical reasoning for the proposed treatment, which may include:

(a) Documentation that reasonable treatment options allowable in the guidelines have been adequately trialed and failed;

(b) The clinical rationale that justifies the proposed treatment plan, including criteria that will constitute a clinically meaningful benefit; or

(c) Any other circumstances that reasonably preclude recommended or approved treatment options.

## II. The ODG permissibly creates a rebuttable presumption as to non-compensability of certain prescription medications.

In essence, the ODG creates a rebuttable presumption as to whether a treatment is recommended, conditionally recommended or not recommended for the treatment of an injured workers' condition. The Board explained that it frequently treats the recommendations in the ODG as comparable to a university evaluator's opinion, and cited numerous Board decisions treating the ODG as such. A university evaluator's opinions are governed by KRS 342.315. That statute requires a university evaluator's examination in all occupational disease claims. The opinions of university evaluators are afforded presumptive weight, KRS 342.315(2), and the burden to overcome the findings and opinions of a university evaluator falls upon the opponent of such

9

evidence. *Magic Coal Co. v. Fox,* 19 S.W.3d 88, 94 (Ky. 2000). "[T]he opponent of a university evaluator's report may introduce countervailing evidence which will overcome the report." *Id.*

KRS 342.315 creates a rebuttable presumption in favor of the university evaluator's opinion but does not prohibit the fact-finder from rejecting a finding or opinion of a university evaluator. It simply requires the ALJ to specifically state reasons for doing so. KRS 342.315(2).

> To the extent that the university evaluator's testimony favors a particular party, it shifts to the opponent the burden of going forward with evidence which rebuts the testimony. If the opponent fails to do so, the party whom the testimony favors is entitled to prevail by operation of the presumption. Stated otherwise, the clinical findings and opinions of the university evaluator constitute substantial evidence with regard to medical questions which, if uncontradicted, may not be disregarded by the fact-finder.

*Magic Coal Co.,* 19 S.W.3d at 96.

There are parallels between the use of a university evaluator's opinion and a designation from the ODG that a prescription or treatment is not recommended and therefore non-compensable. Like the presumptive weight afforded to a university evaluator's opinion, a "not recommended" designation in the ODG creates a presumption that the prescription or treatment is non-compensable. But an ALJ always has the discretion to reject a university evaluator's opinion where it is determined the presumption has been overcome by some other evidence, and the reasons for doing so are expressly stated in the ALJ's decision. *Bullock v. Goodwill Coal Co.,* 214 S.W.3d 890, 890-91 (Ky. 2007). This same rationale is true regarding the presumption created by the

10

ODG because the regulations require that when overriding the ODG, a sound medical opinion supporting such deviation is required. 803 KAR 25:260 §3.

Importantly, this Court has explained that KRS 342.315(2) is properly governed by Kentucky Rule of Evidence 301. As applied to this case, that means that while the ODG's presumption that Howell's Hydrocodone is non-compensable imposes a burden on Howell to present evidence in rebuttal, it "does not shift to [Howell] the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast." *Magic Coal Co.,* 19 S.W.3d at 95 (quoting KRE 301).

Therefore, by applying this reasoning to Howell's case, the ODG creates a presumption that may be overcome by the presentation of contrary evidence supporting the long-term use of Hydrocodone. The administrative regulations give explicit instructions as to how a party can overcome the presumption—803 KAR 25:260 §3 states that "[m]edical providers proposing treatment designated as "Not Recommended" under the guidelines . . . shall articulate in writing sound medical reasoning for the proposed treatment . . . ." This sound medical reasoning may include an explanation that reasonable treatment options have been utilized but failed, a clinical rationale justifying the proposed treatment plan, or any other circumstance precluding recommended or approved treatment options. Floyd County submitted medical evidence, in the form of the opinions of two medical professionals, who reviewed Howell's history and the evidence in her workers' compensation claim. These doctors

11

applied the ODG to Howell's claim to reach their conclusions that the Hydrocodone prescription is non-compensable.

Dr. Fadul opined Hydrocodone is treatment for acute pain and the evidence-based guidelines do not recommend it for long-term use. He noted that, despite the Hydrocodone use, Howell still reported high levels of pain. Dr. Kakel stated his opinion that Hydrocodone is not reasonable or necessary treatment. He emphasized that the ODG do not recommend Hydrocodone as a first-line option, noting evidence shows inconclusive benefit, lack of benefit, or potential harm. In addition, opioids are commonly used for a short-term of less than six weeks. According to the ODG, there are alternatives to opioids that can be used.

Howell presented the medical opinion of Dr. Garrett, who explained her reasoning for prescribing Hydrocodone as well as the long-standing use of the medication. Dr. Garrett also submitted a treatment plan and a statement of exceptions to the ODG Guidelines. Dr. Garrett emphasized Howell's age and the fact that she has been on pain medication for thirty years. Although a party may note evidence that would have supported a different outcome than that reached by the ALJ, such proof is not an adequate basis to reverse on appeal. *McCloud v. Beth-Elkhorn Corp.,* 514 S.W.2d 46, 47 (Ky. 1974). Of course, we must note that Howell is 79 years old and has used the Hydrocodone prescription for approximately thirty years.

In sum, there are three medical reports in the record addressing whether the Hydrocodone is compensable – one report supporting compensability (Dr.

12

Garrett) and two reports supporting non-compensability (Drs. Fadul and Kakel). ALJs are consistently required to weigh conflicting medical evidence when adjudicating workers' compensation claims. KRS 342.285 grants an ALJ, as fact-finder, the sole discretion to determine the quality, character, and substance of evidence. *Square D Co. v. Tipton,* 862 S.W.2d 308, 309 (Ky. 1993). Here, the ALJ deemed the Hydrocodone non-compensable. The Board and Court of Appeals upheld the ALJ's decision. An ALJ's findings of fact are afforded considerable deference and, on appellate review, "will not be set aside unless the evidence compels a contrary finding." *Plumley v. Kroger, Inc.,* 557 S.W.3d 905, 909 (Ky. 2018) (quoting *U.S. Bank Home Mortgage v. Schrecker,* 455 S.W.3d 382, 384 (Ky. 2014)).

Here, Drs. Fadul and Kakel's opinions constitute substantial evidence. While there is conflicting medical evidence in the record, Howell must demonstrate that the evidence was so overwhelming as to compel a favorable finding. *Kroger v. Ligon,* 338 S.W.3d 269, 273 (Ky. 2011). She failed to do so. Therefore, the ALJ did not err in deeming the Hydrocodone non-compensable.

### III. KRS 342.035 is applicable to the reopening claim.

Howell argues that the ODG does not apply to her claim because she was injured before the ODG was adopted, and the law in effect on the date of injury controls the outcome of the claim. *Maggard v. Int'l Harvester Co.,* 508 S.W.2d 777, 783 (Ky. 1974). She also asserts that the required use of the ODG takes away her right to receive treatment that she had been receiving for thirty years that provided relief from the effects of her work injury.

13

Section 20(2) of 2018 Kentucky Acts Chapter 40, the Act now codified in KRS 342.035, which directs the Commissioner to adopt treatment guidelines, provides that KRS 342.035 is

> remedial and shall apply to all claims irrespective of the date of injury or last exposure, provided that, as applied to any fully and finally adjudicated claim, the amount of indemnity ordered or awarded shall not be reduced and the duration of medical benefits shall not be limited in any way.

"[W]hen the General Assembly clearly states legislation is to have retroactive effect or otherwise prescribes its temporal scope or reach, we give effect to the intent of the General Assembly." *Martin v. Warrior Coal LLC*, 617 S.W.3d 391, 396 (Ky. 2021). Thus, based on the Legislature's express declaration, the ODG applies to all injuries, not just those that occurred after September 1, 2020, the date of the ODG's regulatory adoption and implementation.

Howell's argument is essentially that she either had a vested right in receiving certain treatment, i.e., Hydrocodone, or that she had a vested right to expect that the laws generally applicable to medical fee disputes would not change. But Howell's award, in 1995, for her 1993 work injury created no such right. As the Court of Appeals explained, this type of assumption is a type of expectant right. Due process does not apply to mere expectant rights. *See* BLACK'S LAW DICTIONARY 1323 (7th ed. 1999) (defining an expectant right as "a right that depends on the continued existence of present conditions until some future event occurs; a contingent right.").

Medical treatments are inherently fluid, meaning the necessity of a particular treatment may change over time based on change in a patient's

14

conditions, new clinical evidence or changes in treatment guidelines. While Hydrocodone may have been a reasonable and necessary treatment for Howell thirty years ago, medicine has evolved and now that medication is no longer recommended to treat Howell's impairment on a long-term basis. No person can possibly have a reasonable expectation that any particular drug previously deemed compensable will always be deemed reasonable or necessary, or even remain available.

Another facet of Howell's argument is that the presumption created by the ODG effectively imposes a new duty or obligation upon her and is therefore an improper retrospective law. The Court of Appeals explained that, in essence, Howell's argument is that the adoption of the ODG, and its resulting imposition of a presumption of non-compensability for Hydrocodone (that was previously deemed reasonable and necessary for the treatment of her work injury) *diminished* her award.

The Court of Appeals agreed with this contention, reasoning that when Howell was awarded continuing medical benefits in 1995, she was entitled to have the reasonableness and necessity of any prospective work-injury related medical treatment assessed from the standpoint of the law as it existed; and at that time, the operative statutes granted Howell her right to continuing medical benefits. The Court of Appeals concluded that by promulgating 803 KAR 25:260 and 25:270, the Commissioner effectively altered that burden of proof by creating a new, mandatory presumption of non-compensability regarding certain medical treatments and prescriptions – a presumption not based on

15

any evidence of record, but rather solely upon whatever the ODG designates to be "not recommended."

According to the appellate court, before the regulatory adoption of the ODG, there was no limit imposed on Howell's doctor's exercise of medical judgment as to which prescriptions were needed by Howell, except to ensure to implement only prescriptions that were medically reasonable and necessary – an element Howell's employer had the initial burden to disprove. Now, because the ODG does not recommend any form of pain medication for Howell's long-term chronic back pain, the new presumption imposed by the regulatory adoption of the ODG places the initial evidentiary burden, i.e., proving the reasonableness and necessity of her Hydrocodone prescription, on Howell. As such, the Court of Appeals concluded that applying the ODG was a substantive change that would reduce the amount of indemnity ordered or awarded to her, and therefore infringe upon her vested right to continued medical treatment. While the Court of Appeals concluded the presumption was unconstitutionally applied to Howell, it nonetheless upheld the ALJ's determination that the Hydrocodone was non-compensable, given the substantial evidence to support that conclusion.

We disagree with the Court of Appeals. The use of a presumption in a workers' compensation medical fee dispute is a remedial change, not a substantive one. The adoption of the ODG does not alter the substantive rights of parties, but rather controls the evidentiary framework within which those rights are adjudicated. Procedural amendments are "[t]hose amendments

16

which apply to the in-court procedures and remedies which are used in handling pending litigation." *Rodgers v. Commonwealth,* 285 S.W.3d 740, 751 (Ky. 2009) (quoting *Commonwealth of Ky. Dep't of Agric. v. Vinson*, 30 S.W.3d 162, 168 (Ky. 2000)). A presumption, like the one created by the ODG in this case, simply alters the procedures for handling the workers' compensation claim.

This Court delineated a two-part test for identifying a remedial statute in *Kentucky Ins. Guar. Ass'n. v. Jeffers ex rel Jeffers,* 13 S.W.3d 606, 610 (Ky. 2000):

> (1) Is the amendment limited to the furtherance, facilitation, improvement, etc., of an existing remedy; and (2) If so, does it impair a vested right.

Nothing in the adoption of the ODG changes Howell's right to continued treatment for her work-related injury, as ordered by the ALJ in 1995. At that time, Howell was awarded future medical expenses related to her work injury. Nothing in the ODG changes that award, as Howell is still entitled to medical expenses for the reasonable and necessary treatment of her work injury. The fact that Howell was initially prescribed Hydrocodone does not entitle her to perpetual funding of that medication without any reconsideration of its medical necessity under updated clinical standards. As explained in the regulations, the "purpose of the treatment guidelines is to facilitate safe and appropriate treatment of work-related injuries and occupational diseases." 803 KAR 25:260 §2(1). It would be illogical, unreasonable, and most importantly unsafe,

17

if the guidelines governing treatment and compensability of workers' compensation claims were not updated in thirty years.

The burden of proof in showing the non-compensability of the Hydrocodone still remains with the employer, who obtained doctors to conduct a review of Howell's medical records and applied the ODG to conclude that Hydrocodone was not recommended for this type of long-term use. Only if an employer is successful in showing a treatment is not recommended does a claimant have to counter that showing with medical evidence from another physician.

The ODG's designation of certain treatments as not recommended does not categorically deny claimants access to those treatments. It merely requires a treating physical to provide sound medical reasoning for the continued use of certain medications. Further, there may be other portions of the ODG that create presumptions in favor of workers' compensation claimants, i.e., that a certain treatment or prescription they are utilizing is recommended and therefore compensable. Regardless of the burdens and presumptions, ultimately the ALJ is given the discretion to weigh the evidence and reach a determination. The ALJ could have agreed with Dr. Garrett that, in Howell's case, the continued used of Hydrocodone was appropriate. That is precisely the role of an ALJ as a trier of fact.

The Court of Appeals also erred in equating medical benefits to income benefits by concluding that any alteration in the process by which medical benefits are reviewed constitutes an unconstitutional reduction in indemnity.

18

Importantly, there are three types of workers' compensation benefits: income benefits, medical expenses, and vocational rehabilitation. KRS 342.730, 342.020, and 342.710. The adoption of the ODG affected the type of medical treatment deemed compensable but did not alter the amount of indemnity benefits or duration of medical benefits. Medical benefits are subject to ongoing review to ensure the treatment is necessary and reasonable. In contrast, income benefits compensate an injured worker for lost wages and are subject to statutory guidelines governing their calculation and duration. These are two distinct benefits.

We reiterate that medical advancements, updated clinical guidelines, and new treatment methods require a process that can evolve with the fast and consistently evolving medical field. If medical and physical conditions were static, KRS 342.125, the reopening statute, would be illusory. As stated in *Messer v. Drees,* "[t]ime often tells more about medical cases than the greatest of experts are able to judge in advance." 382 S.W.2d 209, 212 (Ky. 1964). Howell's failure to prove that the continued use of Hydrocodone was medically necessary and reasonable did not reduce any amount of indemnity ordered or awarded. Howell's medical benefits claim remains in existence, and therefore the adoption of the ODG does not impair a vested right. As such, the statutory amendment allowing the Commissioner to adopt treatment guidelines is remedial, not substantive, and is not unconstitutional as applied to Howell's claim.

19

## IV.    The application of the Official Disability Guidelines is not unconstitutional.

Next, Howell argues the use of the ODG violates due process and equal protection.  We disagree.  Generally, "acts of the legislature carry a strong presumption of constitutionality."  *Wynn v. Ibold Inc.,* 969 S.W.2d 695, 696 (Ky. 1998).  "Workers' compensation statutes concern matters of social and economic policy."  *Vision Mining, Inc. v. Gardner,* 364 S.W.3d 455, 466 (Ky. 2011) (citing *Cain v. Lodestar Energy, Inc.,* 302 S.W.3d 39, 42 (Ky. 2009)).  Therefore, this Court will uphold workers' compensation legislation "so long as it rationally relates to a legitimate state objective."  *Cates v. Kroger,* 627 S.W.3d 864, 870 (Ky. 2021).

Before the Court of Appeals, Howell argued that the Legislature had no authority to delegate medical decision-making for injured workers to the ODG.  Howell appears to abandon this argument and, before this Court, has made general assertions that use of the ODG violates due process and equal protection.  Howell focuses on the fact that claimants can only access the ODG by purchasing a subscription to see what rules govern their claim.[4]

Due process requires that affected parties be given "the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (internal citation and quotation omitted).

---

[4] Floyd County argues that Howell has raised this payment argument for the first time in this Court.  We note that the ALJ and Board have no authority to consider constitutional claims.  While it does not appear that Howell presented this precise argument to the Court of Appeals, she generally asserted equal protection and due process claims.  For the sake of completeness, we nonetheless address her argument.

Specifically, in an administrative setting, this encompasses "a hearing, the taking and weighing of evidence if such is offered, a finding of fact based upon a consideration of the evidence, the making of an order supported by substantial evidence, and, where the party's constitutional rights are involved, a judicial review of the administrative action." *Morris v. City of Catlettsburg,* 437 S.W.2d 753, 755 (Ky. 1969). Howell has received all procedures she is entitled to under these guarantees of due process.

We note that the statutory adoption of external guidelines is not unprecedented, nor is it per se constitutionally problematic. In determining workers' compensation benefit awards, the Legislature requires benefits be based on the percentage of whole-body impairment as determined by the American Medical Association's *Guides to the Evaluation of Permanent Impairment.* Like the ODG, this statutory framework requires physicians and attorneys to access or purchase the AMA Guides to effectively participate in workers' compensation proceedings.[5] Floyd County asserts—and Howell does not dispute—that all Department of Workers' Claims staff may share relevant sections with injured workers upon request, and that claimants may contact specialists at the DWC with questions or complaints about medical treatment denials. Those specialists are authorized to provide pertinent sections of the ODG by email or print. Further, all ALJs have access to the ODG. Additionally, we note that Howell attached portions of the ODG to pleadings in

---

[5] Floyd County asserts that medical journals, OSHA regulations, legal research services and legal treatises frequently require payment for full access, yet they are regularly relied upon in courts without constitutional issues.

21

the administrative record, demonstrating that she clearly has access to the ODG and thus was not prejudiced in any way by lack of ODG access or payment of any subscription fees while adjudicating her claim.[6]

Howell's equal protection claim is similarly unconvincing. The 14th Amendment to the United States Constitution requires persons who are similarly situated to be treated alike. Because workers' compensation statutes concern matters of social and economic policy, the statutes must be rationally related to a legitimate state interest. *Lodestar Energy, Inc.,* 302 S.W.3d at 43. This Court presumes that legislative acts are constitutional. *Id.*

Howell has not shown that she was treated differently than any other workers' compensation claimant. The statute explicitly permitting the adoption of the ODG applies equally to all workers' compensation claimants. The fact that the ODG requires a subscription payment does not change its application. As noted above, if workers' compensation claimants are unable to pay for access, the Department of Workers' Claims will provide access to the relevant portions of the ODG via email or print. Further, Howell demonstrated that she has access to the ODG, and therefore cannot assert any injury stemming from the required purchased of access to the ODG.

Further, the ODG applies uniformly to all workers' compensation claimants and does not create any classifications that would trigger an equal protection violation. Howell asserts that it treats claimants that can pay for

---

[6] Howell offers no evidence the subscription fees are so substantial as to interfere with her ability to pursue her claim. In any event, and as noted above, the Department provides ODGs to claimants upon request.

access to the ODG differently than claimants who cannot afford access. But, as addressed above, she did have access to the ODG, as demonstrated by her attachment of portions of the ODG in the workers' compensation record below. Therefore, Howell has not demonstrated any cognizable injury from an equal protection standpoint.

## CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals, albeit for different reasons, and uphold the ALJ's determination that Howell's Hydrocodone prescription is non-compensable.

All sitting. Conley, Goodwine, Keller, Nickell, and Thompson, JJ., concur. Lambert, C.J., concurs in result only.

COUNSEL FOR APPELLANT/CROSS-APPELLEE, JUDY HOWELL:

Thomas W. Moak
Moak & Nunnery, P.S.C.


COUNSEL FOR APPELLEE/CROSS-APPELLANT, FLOYD COUNTY BOARD OF
EDUCATION:

W. Barry Lewis
Lewis and Lewis Law Offices


APPELLEE, DR. CASSANDRA GARRETT:

Pro se


ADMINISTRATIVE LAW JUDGE:

Hon. Chris Davis


WORKERS' COMPENSATION BOARD:

Hon. Michael Wayne Alvey, Chairman