Cecil **FUGATE**, Appellant,

v.

**UNITED STATES STEEL CORPORATION**
**et al., Appellees.**

Court of Appeals of Kentucky.

May 9, 1975.

Rehearing Denied Oct. 17, 1975.

Eugene Goss, Harlan, for appellant.

William A. Rice, Harlan, Cyril E. Shadowen, Louisville, for appellees.

JONES, Justice.

On January 21, 1974, Cecil Fugate filed an application for adjustment of claim

with the Workmen's Compensation Board. The claim alleged that Fugate became affected with the occupational disease of pneumoconiosis on January 11, 1974, when he was last exposed to the hazards of the occupational disease of pneumoconiosis. Fugate, at the time of the filing of the claim for benefits, was 61 years of age. It is undisputed that he had worked as an underground coal miner for approximately 37 years. In his claim Fugate contended that he was entitled to $81.00 [1] per week for life. Based upon medical reports, United States Steel and the Special Fund withdrew their notices of resistance. Subsequently, United States Steel and the Special Fund filed a motion to amend their withdrawals of resistance. It was their contention that the maximum compensation rate applicable to this claim was less than $81.00 per week and that the maximum duration of compensation was 425 weeks. They further contended that Fugate was not entitled to benefits for life under the state Workmen's Compensation Law. They insisted that Fugate was entitled to claim additional benefits under federal law.

The Workmen's Compensation Board awarded Fugate benefits under former KRS 342.095 at the rate of $65.00 per week for 425 weeks as required by the latest average prevailing wage. The board apportioned the award against the Special Fund at $48.75 per week and directed that United States Steel Company pay the additional amount of $16.25 per week.

Fugate filed a petition for review of the award in the Harlan Circuit Court. He alleged that the Workmen's Compensation Board erred in not awarding him benefits at the rate of $81.00 per week for life. On October 10, 1974, the circuit court affirmed the opinion and award of the board.

The precise issue presented in this appeal is whether Fugate is limited to an award of $65.00 per week for a period of 425 weeks, or is entitled to the increased benefits provided by Chapter 78, Acts of 1972, as construed in Maggard v. International Harvester Company, Ky., 508 S.W.2d 777 (1974).

Section 37 of the 1972 Act provided as follows:

"NOTE: Effective date. This act shall be effective on January 1, 1973; and effective for all claims filed on and after January 1, 1973; provided, however, that in the event federal law specifies that claims covered by provisions of this Act shall be filed with a federal agency such claims shall continue to be filed as required by the federal law until repeal or expiration of the federal law requiring same; then, in that event, the increase in benefits provided herein shall not apply to those claims where benefits are awarded under the federal law. The benefits under the present law KRS Chapter 342 shall apply to those claims."

In Chapman v. Eastern Coal Corporation, Ky., 519 S.W.2d 390 (1975), it was decided that by virtue of the foregoing provision black lung claims for disability occurring before January 1, 1974, were excluded from the increase in amount of monetary benefits applicable to other disability claims under the 1972 Act. We observed in that opinion that an obvious effect of this legislative exclusion was to leave any additional burden with respect to black lung claims on the taxpayers of the United States so long as Congress saw fit to make the public money available, but that beginning in 1974 black lung was "unequivocally placed on an equal plane with other work-connected disabilities." 519 S.W.2d at pp. 392, 394. Our statement to the latter effect was based, however, upon the assumption that as of January 1, 1974, our compensation law as amended by the 1972 Act provided "adequate coverage for pneumoconiosis" within the meaning of the federal

---

1. According to the brief for the Special Fund, the correct amount should be $84 (60% of the average weekly wage of $139.49, per KRS 342.740) rather than $81 per week for a 1974 claim if it is not within the exception of Sec. 37, Ch. 78, Acts of 1972.

law, 30 U.S.C.A. § 931, and indeed it does so appear when the provisions of our law are compared with those of the federal law according to the substantive criteria set forth in 30 U.S.C.A. § 931(b)(2).[2] Nevertheless, as of this writing the Secretary of Labor has not yet listed *any state* as providing "adequate coverage for pneumoconiosis."[3] See 20 CFR 722.152.

The result is that by virtue of 30 U.S.C. § 931 et seq. black lung claims may be filed with and allowed by the United States Department of Labor under the Longshoremen's and Harbor Workers' Compensation Act, (hereafter called the Longshoremen's Act), 33 U.S.C. § 901 et seq., and are payable by the employers or their insurers rather than the public treasury.

It is the contention of the Special Fund that the federal law still provides a remedy for black lung claimants and that the federal law has not been repealed nor has it expired.

The court is of the opinion that the position of the Special Fund is well taken.

Under the provisions of federal law all black lung claimants have a remedy for obtaining benefits. Kentucky has not been certified by the Secretary of Labor as being in compliance with federal requirements in providing benefits for black lung claimants. Under 30 U.S.C.A. Sec. 932(e), payment of benefits is to be continued through the United States Department of Labor for a period of twelve years after December 30, 1969.

■ The Legislature, by Section 37 of Senate Bill 184, has deferred benefit increases to black lung claimants as long as there is a federal black lung program applicable to Kentucky miners. Such a federal program is now in existence.

■ Fugate insists that the purpose of Section 37 of Senate Bill 184 was to defer the increase of benefits until January 1, 1974. The language of Section 37 is clear and concise. If that had been the intent of the Legislature, it should have expressed that intent.

The enactment of Section 37 of Senate Bill 184 in 1972, and other amendments to KRS 342, like the opening of Pandora's box, released a multiplicity of ills relating to "black lung" benefits to coal miners affected with pneumoconiosis. Now, the only thing that remains is hope. If any changes are to be made in Kentucky workmen's compensation law to increase benefits or to shift the burden of payments that is the province and prerogative of the General Assembly./

The Kentucky Legislature has deferred black lung benefit increases to claimants as long as there is a federal black lung program applicable to Kentucky miners. A federal program does exist and is not slated to expire until 1981 or until this state is listed by the Secretary of Labor as providing adequate coverage for pneumoconiosis, whichever is the earlier.

The judgment is affirmed.

All concur.

---

2. Under the federal law this particular claimant's benefits would amount to $43.25 per week, subject to adjustment according to current salary schedules for federal employees, whereas the maximum compensation under the 1972 Kentucky law for permanent total disability occurring in January of 1974 is $84 per week for life. On the other hand, though $84 per week is the maximum allowance under Kentucky law regardless of the number of dependents, federal benefits are augmented, during such time as the claimant has dependents, to the extent of 50% for one, 75% for two, and 100% for three dependents. 20 CFR § 725.510(a). Another point of disparity between the federal and state laws is the liberal allowance of attorney fees by KRS 342.320. However, as of the present time the amount of benefits payable under our law ordinarily (that is, in cases involving less than three dependents) would so far exceed those payable under the federal law that the maximum attorney fee of $6500 could hardly spell the difference between adequate and inadequate coverage.

3. The action of the Secretary of Labor in listing or failing to list a state can be subjected to review by a United States Circuit Court of Appeals. 30 U.S.C.A. § 931(b)(2). Whether that avenue has been taken by any state thus far is not within our knowledge.