Douglas BULLOCK Appellant

v.

GOODWILL COAL COMPANY; Surgical Associates, P.S.C., St. Joseph Healthcare; Rockcastle Hospital; Hon. Grant S. Roark, Administrative Law Judge and Workers' Compensation Board Appellees.

No. 2006–SC–0186–WC.

Supreme Court of Kentucky.

Feb. 22, 2007.

McKinnley Morgan, Morgan, Madden, Brashear & Collins, London, Counsel for Appellant, Douglas Bullock.

James W. Herald, III, J. Gregory Allen, Riley & Allen, P.S.C., Prestonsburg, Counsel for Appellee, Goodwill Coal Company.

Andrew Reed Jacobs, Stites & Harbison, PLLC, Lexington, Surgical Associates, P.S.C.

A. Stuart Bennett, Jackson Kelly, PLLC, Lexington, St. Joseph Healthcare.

### OPINION OF THE COURT

KRS 342.315(2) requires an Administrative Law Judge (ALJ) to afford the clinical findings and opinions of a designated university evaluator presumptive weight; requires the opponent of such evidence to overcome it; and requires an ALJ to state specific reasons when rejecting a universi-

ty evaluator's clinical findings and opinions.

The ALJ's opinion in the present case made no reference whatsoever to the designated university evaluator's report. Without having filed a petition for reconsideration, the claimant appealed based on the ALJ's failure to comply with the statute. Convinced that the ALJ erred as a matter of law, the Workers' Compensation Board (Board) vacated the decision and remanded for further consideration. The Court of Appeals distinguished *Brasch–Barry General Contractors v. Jones,* 175 S.W.3d 81 (Ky.2005); relied on *Eaton Axle Corp. v. Nally,* 688 S.W.2d 334, 337–38 (Ky.1985); and found the claimant's failure to file a petition for reconsideration to be fatal to his appeal. Because the ALJ failed to give the university evaluator's report presumptive weight or reject it and because KRS 342.281 would not have permitted the ALJ to reconsider the merits in light of the report, we reverse.

The claimant was injured in 1981, when a small steel fragment struck him and penetrated his arm. Physicians decided not to remove the fragment. About 18 months later, the claimant was admitted to the University of Kentucky Hospital where it was discovered that the fragment had migrated and become embedded in the wall of his heart. The attending physician diagnosed atypical chest pain that seemed to be associated with hyperventilation, with a possible emotional overlay and no evidence of cardiac origin. The parties settled the claim in 1984, leaving open the payment of future medical benefits. This appeal results from a second reopening to resolve whether treatment obtained nearly 20 years later for chronic chest pain was related to the injury. The first reopening concerned some prior medical treatment.

It was filed a few months earlier and resolved in the employer's favor.

A May, 2002, letter from Dr. Saylor indicated that the claimant was seen in her office numerous times for chest pain. An episode that he reported in September, 1996, probably was secondary to bronchitis. An episode that occurred about two weeks later was associated with a transient ischemic attack. He was evaluated at the hospital for chest pain for two days in January, 1999. Testing indicated that it was probably related to bronchitis. Dr. Saylor noted twice that the claimant was unable to differentiate chest pain secondary to the metal fragment from chest pain due to bronchitis.

In January, 2001, Dr. Loventhal admitted the claimant to St. Joseph Hospital for the evaluation of persistent, severe chest pain that was precipitated by physical activity. Among other things, he ordered a cardiac catheterization. Noting that the test revealed no radiographically demonstrable coronary artery disease and revealed normal left ventricular function, Dr. Johnstone diagnosed non-cardiac chest pain and recommended risk factor management. The claimant then saw Dr. Havens, a thoracic and cardiovascular surgeon, who advised against removing the metal fragment as there was no clinical indication to do so. His treatment notes indicated that the claimant's symptoms might or might not be related to the metal fragment and that he did not think it would move. His final report noted that the claimant did have atypical chest pain and that "the relationship between the foreign body and the chest pain has remained an enigma for several years."

Dr. Olash conducted a subsequent utilization review for the workers' compensation insurance carrier and determined that

the January, 2001, hospitalization and cardiac catheterization were unrelated to the metal fragment. He noted that testing revealed normal heart action and that hospital records did not indicate that metallic fragments caused the symptoms. There was no evidence of an inflammatory reaction associated with the fragment that, if present, might have caused some discomfort. When auditing the hospital bill, Kelley West, R.N., adopted Dr. Olash's recommendation and advised the carrier to return the bills to the providers for forwarding the claimant's health insurance carrier.

The claim was assigned initially to ALJ Riggs, who directed the claimant to undergo a university evaluation. Dr. Gurley performed the evaluation in September, 2003, and concluded that the claimant had "a chronic chest pain syndrome that could possibly be related to the intracardiac metal fragment." He explained that he had seen "a number of chronic chest pain syndromes following injury to the right atrial free wall in the vicinity of the metal fragment" and recommended further testing. It appears from the record that the case was placed in abeyance to permit the testing. ALJ Riggs later contacted Dr. Gurley and discovered that the testing was a catheterization procedure, that the claimant had declined to undergo the procedure "due to the hazards of this invasive testing," and that Dr. Gurley recommended no other testing.

ALJ Riggs' term expired, after which the claim was reassigned to ALJ Roark for a decision on the merits. Although the opinion listed the reports from Drs. Havens, Olash, and Saylor and from Kelley West, a registered nurse, and referred to the records from St. Joseph Hospital East, it failed even to mention Dr. Gurley. The ALJ stated that testing that was performed each time the claimant sought treatment for chest pain related his complaints "to bronchitis type problems" and that they responded well to treatment based on that diagnosis. Dr. Havens indicated that the relationship between the foreign body and the chest pain had "remained an enigma for several years." Noting "the limited records available," the ALJ concluded that the employer had met its burden of showing that the disputed medical bills were not causally related to the work injury and, therefore, were not compensable.

Although the opinion failed to mention Dr. Gurley's report, the claimant did not file a petition for reconsideration in order to bring the matter to the ALJ's attention. Nor did he request the specific findings that KRS 342.315(2) requires when an ALJ rejects a university evaluator's clinical findings and opinions. He appealed directly to the Board, asserting that it was the employer's burden to overcome Dr. Gurley's report and that the outcome would have been different if the ALJ had been aware of the report. The employer asserted that the claimant's failure to preserve the issue with a petition for reconsideration was fatal to the appeal. It also asserted that the ALJ's analysis was supported by substantial medical evidence and that Dr. Gurley's conclusions were equivocal at best.

Vacating the decision, the Board noted that the ALJ failed to consider a significant portion of the medical evidence when deciding the merits, including Dr. Gurley's testimony. The Board found the ALJ's failure to mention Dr. Gurley's clinical findings and opinions and to state any specific reasons for rejecting them to be erroneous as a matter of law. Concluding

that the circumstances did not require a petition for reconsideration, the Board remanded for findings of fact and conclusions of law in accordance with KRS 342.315(2).

KRS 342.281 permits a party to file a petition for reconsideration of an ALJ's decision within 14 days from the date of an award, order, or decision but limits the ALJ to correcting "errors patently appearing on the face of the award." The court construed the statute in *Reliance Diecasting Co. v. Freeman*, 471 S.W.2d 311 (Ky. 1971); *Commonwealth, Dept. of Mental Health v. Robertson*, 447 S.W.2d 857 (Ky. 1969); and *Wells v. Beth–Elkhorn Coal Corp.*, 708 S.W.2d 104 (Ky.App.1986), as permitting the fact-finder to correct patent legal and factual errors. The court explained in *Beth–Elkhorn Corp. v. Nash*, 470 S.W.2d 329, 330 (Ky.1971), however, that KRS 342.281 expresses a legislative policy to prohibit the fact-finder from reconsidering the merits.

KRS 342.285 provides that an ALJ's findings are conclusive and binding as to questions of fact unless a petition for reconsideration is filed. It permits the Board to review a decision to determine whether or not the ALJ's action was authorized; was the product of fraud; was in conformity with Chapter 342; was clearly erroneous under "the reliable, probative, and material evidence contained in the whole record;" or was arbitrary and capricious, an abuse of discretion, or a clearly unwarranted exercise of discretion. KRS 342.290 limits the scope of judicial review to matters subject to review by the Board and errors arising before the Board.

In *Eaton Axle v. Nally, supra*, the court determined that KRS 342.281 and KRS 342.285 place upon a party who wishes to appeal the burden to request any necessary findings of fact before the appellate

process begins. The court explained that KRS 342.285(1) requires findings of fact to be made on all contested issues and that a failure to make statutorily-mandated findings of fact is a patent error. Complaining of the burden on judicial resources created by cases that had to be remanded for additional findings of fact on issues that were essential to the decision, the court determined that KRS 342.281 is the statutory counterpart of CR 52.04. Emphasizing that the purpose of the rule "is to require that all justiciable issues are disposed of before the appellate process begins," the court determined that a petition for reconsideration must be filed in order to preserve a patent error or omission of fact for judicial review. *Id.* at 338. In *Wells v. Ford*, 714 S.W.2d 481 (Ky.1986), the court determined subsequently that a logical extension of the fact-finder's authority to correct errors on petition for reconsideration is the authority to decide a still unresolved question on the merits.

Asserting that he was not required to file a petition for reconsideration, the claimant relies on *Brasch–Barry General Contractors v. Jones, supra*, in which an ALJ relied on a permanent impairment rating that did not conform to the AMA *Guides to the Evaluation of Permanent Impairment (Guides)*. Without filing a petition for reconsideration, the employer appealed. The Board held that such a medical opinion did not comply with KRS 342.730(1)(b) and remanded for further consideration, but the Court of Appeals determined that the employer's failure to petition for reconsideration of what was a "completely factual" issue precluded an appeal. Reinstating the Board's decision, this court reaffirmed *Eaton Axle Corp. v. Nally, supra*, as being completely consistent with the procedures for review set forth in KRS 342.285. The court ex-

plained that the Board had squarely and appropriately construed the intent of KRS 342.730, which was to base income benefits on a permanent Impairment rating that conformed to the *Guides.* Stating that the Board decided a question of law, the court concluded that KRS 342.281 did not require the employer to file a petition for reconsideration in order to preserve it for review.

KRS 342.315(2) requires an ALJ to afford a university evaluator's clinical findings and opinions presumptive weight but permits the ALJ to rely on rebuttal evidence and reject them. It requires an ALJ who rejects a university evaluator's clinical findings and opinions to state a reasonable basis for doing so. In the present case, the ALJ failed to mention the university evaluator's report.

In *Magic Coal Co. v. Fox,* 19 S.W.3d 88, 95–97 (Ky.2000), the court construed KRS 342.315(2) to mean that the clinical findings and opinions of a university evaluator are presumed to be unbiased and accurate but that they may be rebutted by substantial evidence that is more persuasive. Whether an ALJ has acted unreasonably in rejecting a university evaluator's clinical findings and opinions cannot be determined without knowing the basis for the decision. Consistent with that reality, KRS 342.315(2) requires an ALJ to state a reasonable explanation for doing so. A failure to provide an explanation when one is required is an error of omission that is patent on the face of the opinion. The omission does not necessarily render the decision to reject the university evaluator's findings and opinions erroneous, but it prevents a meaningful appellate review of the decision. It is an error that an ALJ may correct on petition for reconsideration and that *Eaton Axle Corp. v. Nally, supra,* requires to be raised before the appellate process begins.

One ALJ ordered the university evaluation in the present case, but another ALJ considered the merits and commented about the "limited records available." Under the circumstances, the failure to mention the university evaluator's report does not indicate that the ALJ rejected it but that the ALJ was unaware of it. As a result, the ALJ failed to consider Dr. Gurley's clinical findings and opinions and failed to afford them presumptive weight or reject them when deciding the merits. This was an error that the ALJ had no authority to correct on a petition for reconsideration because to do so would have required a reconsideration of the merits, which KRS 342.281 does not permit. Therefore, the claimant was not required to petition for reconsideration in order to preserve the error.

The decision of the Court of Appeals is reversed, and the claim is remanded to the ALJ for further consideration.

CUNNINGHAM, McANULTY, MINTON, NOBLE, SCHRODER and SCOTT, JJ., concur.

LAMBERT, C.J., not sitting.